**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISETTE DAPENA, on behalf of herself and a class consisting of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ONTEL PRODUCTS CORPORATION and WORLD PACK USA, LLC,<br><br>Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.      Plaintiff Lisette Dapena ("Plaintiff"), individually, and as a representative of the class described herein, brings this action against the herein named defendants (collectively "Defendants"), and alleges as follows based on personal knowledge, the investigation of her counsel, and on information and belief:

**INTRODUCTION**

2.      This is a class action brought by Plaintiff, individually and on behalf of all other similarly situated consumers who purchased an outdoor LED solar light (the "Solar Light") sold under the trade name "Ever Brite."

3.      Ontel Products Corporation ("Ontel") markets, promotes, and sells the Solar Light as an outdoor light for affixing to exterior surfaces of buildings like houses, sheds, and garages.

4.      World Pack USA, LLC ("World Pack", and together with Ontel, "Defendants") processes, fulfills, and/or administers orders for the Solar Light, including retail distribution and direct to consumer orders.

1

5.     Defendants knew, or should have known, that the Solar Light is defective and unfit for its ordinary and intended purpose because, as described herein, the Solar Light is an unsafe product, and there are numerous reported incidents of the Solar Light causing a fire, apparently as a result of Defendants marketing, promoting, selling and distributing a product that has been manufactured in a faulty manner and suffers from poor quality control.  Moreover, Defendants actively concealed material facts regarding the poor quality from Plaintiff and the other members of the Class, and the members of the Class have been harmed thereby.

6.     Despite numerous reports of fires caused by the overhearing of Solar Lights, Defendants continue to market and sell the Solar Light to consumers throughout the United States, causing them millions of dollars in damages. As a result of Defendants' actions, Plaintiff and the other members of the Class have suffered injury in fact, were put at risk through use of their Solar Lights, and incurred fees and costs associated with purchasing defective Solar Lights.

## JURISDICTION AND VENUE

7.     ***Subject Matter Jurisdiction.*** This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiff resides in New York and Defendants maintain headquarters in New Jersey and Nevada. This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiff and every Class Member, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class Members reside across the United States and are therefore diverse from Defendants.

8.     ***Personal Jurisdiction.*** This Court has personal jurisdiction over Defendants because Defendants have significant minimum contact with this State, and intentionally availed themselves of the laws of this State by transacting a substantial amount of business throughout

the State and this District.  Indeed, Defendants market and distribute the Solar Light across the United States including in New York.

9.     *Venue.* Venue is proper under 18 U.S.C. § 1965(a), because Defendants are subject to personal jurisdiction in this District as alleged above, and Defendants have agents located in this District.  In addition, Plaintiff resides in this District and, as shown below, her Solar Light, which was purchased in this District, set fire to a fence on her property in this District, causing damage in this District.

**PARTIES**

**Plaintiff**

10.     Plaintiff is a citizen and resident of the State of New York. Plaintiff purchased a Solar Light that was marketed by Ontel in a transaction that was processed by World Pak. In purchasing a Solar Light, Plaintiff reasonably believed it was a safe product. Plaintiff no longer uses the Solar Light she purchased because it set fire to her fence on her property, causing significant damage thereto, as shown by the following image:



11.     Plaintiff spent $517.16 to repair the damage caused to her fence as a result of her Solar Light having caught fire.

**Defendants**

12.     Upon information and belief, Ontel is a corporation organized and existing under the laws of New Jersey, with its principal place of business at 21 Law Drive, Fairfield, New Jersey 07004.

13.     Upon information and belief, World Pack is a limited liability company organized and existing under the laws of Nevada, with its principal place of business at 2880 North Lamb Boulevard, Las Vegas, Nevada 89115.

## FACTUAL BACKGROUND

14.     In or about 2015, Ontel began marketing, promoting, the Solar Light under the trade name "Ever Brite" through direct marketing television commercials aired on one or more national television networks.

15.     At or about the same time, Ontel established a website for the Solar Light at the www.buyeverbrite.com, through which the Solar Light is available for purchase.

16.     Ontel promotes and markets the Solar Light as an outdoor light for affixing to the exterior surfaces of buildings such as houses, sheds, and garages.

17.     Upon information and belief, World Pack processes, fulfills, and/or administers orders for the Solar Light placed through www.buyeverbrite.com and through the phone number(s) displayed in direct marketing television commercials for the Solar Light.

18.     Upon information and belief, World Pack ships units of the Solar Light to customers located throughout the United States and its territories, as well as Canada.

19.     Safterproducts.gov lists multiple reports of fires through consumers' use of the Solar Light.[1]

   a.   A November 4, 2016 report (#20161005-17AFE-2147412326) reports:

Had the Everbrite solar powered outdoor LED light put on my eave of my house outside near my gate. Had been working for about 2 months. My husband noticed it quit working about a week ago, and we left it up so we could later on, replace the solar portion. When I looked at it on October 1st, it had burned a portion of my eave, shingles on the roof, and fence when it fell. This could have caused a house fire had it not burned itself out. I have pictures also. I tried to contact the company through e-mail with no response. I did find 3 other complaints online that this had happened to others.

   b.   A January 27, 2017 report (#20170103-AB6F4-2147408567) reports that

        "The EVERBRITE Motion Activated Outdoor LED Light caught fire."

   c.   A February 9, 2017 report (#20170105-A0080-2147408475) is reports

        that:

   d.   A February 22, 2017 report (#20170124-AA26E-2147407740) reports that

        a Solar Light "caught on fire";

My Ever Brite solar light exploded, caught on fire and burned a hole in my fence. Had I not been home to put it out I may have lost my home.

   e.   A May 17, 2017 report (#20170418-02958-2147404278) states:

Everbrite solar light over heated and burst into flames. Caught my house on fire. If my son had not been home our home would have been a total loss. This product is unsafe and needs to be pulled. I have read others have had the same problem with the Everbrite light.

   f.   A June 5, 2017 report (#20170330-4EB30-2147404743) states: "The solar

        light,EverBrite,shorted out and cause a fire", and;

---

[1] *See* https://www.saferproducts.gov/Search/Result.aspx?dm=1&pcid=100&q=ever&srt=0.

5

g.  A July 12, 2016 report (#20160712-DEC4F-2147416960) states:

EverBite solar powered security light burned while attached to wood deck. Devi[c]e was installed in March 2016. While sitting on the deck my wife noticed the smell of smoke. She was smoke rising from the corner of the deck and discovered a small fire on the grass below. We were able to quickly put out the fire and smoldering deck with water. No injuries or further damage beyon[d] charred portion of deck and small burnt area of lawn.

20.    On March 14, 2017, a review posted to another website[2] included:

Don't buy this light if you value your property. The lights aren't that bright and they went out within months of purchase.

I came home one day and found the light on my garage had exploded and caught fire. I'm very lucky that it melted off. Otherwise my garage would have burned down. I've contacted the company 3 times without any response.

I've reported them to the BBB, consumer affairs and Saferproducts.gov, a website to report defective items. I'm trying to get the word out to as many people as possible to 'stay away' from these lights and to take them down 'immediately' if they have them. The local news even came out to do a story on these lights. This will help get the word out.

Please don't purchase this item. It's dangerous and needs recalled.

It's sold online and in stores, and I'm trying to get the word out for everyone to stay far away from them. To this day, the company has never responded to me.

  

Comments to the complaint include the following:

---

[2] https://ever-brite.pissedconsumer.com/dangerous-product-201703141020831.html

Please take these lights down if you have them. My parents house almost burned down because one the lights burst into flames.

Fire department got there and put it out.

Burned a huge hole in the side of the house. Please take these lights down.

21.    A review on Walmart.com dated March 17, 2017, states

I bought (2) of these at my WalMart in Beaufort S.C. and one of them caught my mobile home on fire. That's right the fire chief that was on the scene told me that the culprit was this light. After the light burnt up inside of itself, mounted on the side of my trailer, the light dripped down to the mulch and spread to the end of the trailer where it caught my garbage cans on fire and burnt the area that you see in the photo. The charred spot you see looking at the picture was the one that burnt up.STAY AWAY FROM THESE !

22.    Another fire allegedly caused by a Solar Light was posted on Youtube.com by Alton    Bell    on    July    11,    2016,    and    is    available    at https://www.youtube.com/watch?v=PhrzrwhysCc. Mr. Bell's comments on his video include "Seems that it did just burst into flames. I am guessing the battery was the culprit (like the samsung phones and hover boards)" and "It worked really well from April through July.... until it caught fire and nearly burned down my deck. Fortunately it melted off the deck and the grass below was not too dry so the fire did not spread quickly. I reported to the consumer product safety commission. The U.S. Consumer Product Safety Commission (CPSC) has posted your Report No. 20160712-DEC4F-2147416960 on SaferProducts.gov."

23.    On May 8, 2017, *Fox 8 Cleveland* published a video of a fire caused by a Solar Light as part of an article entitled "Fire officials: LED light unexpectedly sparks fire in garage" which reported in part:

SOUTH EUCLID, Ohio – A local fire department is warning consumers about a solar-powered light after a resident reported it unexpectedly burst into flames, damaging his home.

7

In television commercials and on its website, the makers of Ever Brite market the motion-activated LED light as an inexpensive way to brighten outdoor spaces.

However, Johnny Hunt, 89, said it caused costly damage to his South Euclid garage.

"I heard this 'pop,'" Hunt said. "And I turned around, and I saw this blaze."

He said he was working outside last week when the light suddenly caught fire above his garage door. He said he was able to use a towel to extinguish it before it spread, but the fire destroyed the light and burned and melted vinyl siding.

"I wouldn't want that to happen to nobody because, had I not been here at this particular spot, the house could've burned down," he said.

Hunt said his relatives and neighbors have been trying to contact the makers of Ever Brite on his behalf for days but have not received a response. So, he took the device to the South Euclid Fire Department for examination.

Fire Prevention Officer Scott Sebastian said he began searching for a product recall, but found none. Instead, he found other customers who have reported similar incidents across the country involving the "sold on tv" product.

In one post, a consumer warns the product is "unsafe" while another reviewer warns others to "stay away."

Ever Brite did not respond to emails and phone calls from FOX 8 News seeking comment about the fires.

"A lot of them are located on garages or they're by front doors or on decks, and all these things are combustible," Sebastian said. "If nobody's home, if it's still in place, it can do some damage to the home."

He said several other fire inspectors he called had not heard of problems with the devices.

The South Euclid Fire Department IS planning to have an electrical engineer examine Hunt's device this week to pinpoint a cause, including whether the fire may have originated in the lithium ion battery, according to Sebastian.

He warned other consumers to beware.

"Just better to be safe, to remove it from your home," he said.

Hunt said he's hoping to shed light on the potential risk to other consumers.

"I would not recommend this to a dog," he said.

24.    On May 8, 2017, *Fox 8 Cleveland* published an article entitled "Company maintains light's safety despite growing reports of fires" which reported in part:

> ROAMING SHORES, Ohio – The number of local reports of the Ever Brite solar-powered LED light spontaneously catching fire is growing, while the company behind the product maintains that it is safe.
>
> Volunteer fire fighter Dwayne Neider, of Roaming Shores, said the light appears to have caught fire above his garage door in late March.
>
> The fire charred the area and left the light in unrecognizable pieces on the ground.
>
> "The remains of the Ever Brite light were melted onto the ground. The resulting damage is quite evident. I've got a pretty charred front to my garage," Neider said, adding the burn marks were so unusual that he wasn't sure at first what had happened.
>
> He said the damage is estimated at about $1,500, which is just shy of his insurance deductible.
>
> "You would never think that it's going to do that much damage," Neider said.
>
> This week, the South Euclid Fire Department launched an investigation into the device after a resident reported it exploded on his garage.
>
> Johnny Hunt said he was working nearby when he heard a popping sound and then grabbed a towel to put out the flames before they spread.
>
> "The house could've burned down," he told FOX 8 News Tuesday.
>
> Other consumers have complained about the same thing happening with the product across the country.

Several have posted online reviews claiming their lights also caught on fire. In the last year, at least five people have reported the problem to the U.S. Consumer Product Safety Commission.

"Someone's got to look into this, and someone's got to hold them accountable," Neider said.

Ontel Products Corporation, the company behind Ever Brite and several other products, did not agree to an interview and did not answer questions about what, if anything, it is doing in response to the customer complaints.

Ontel Products Corporation's In-House Legal Counsel, Caroline Kinsey, provided a statement saying the company "strives to provide consumers with quality solutions and customer service, and it is committed to ensuring the safety of all its products."

"The Ever Brite light meets or exceeds all applicable safety regulations required by law for this type of product in the U.S.A.," the statement said.

The company issued similar responses to the incident reports filed by consumers with the Consumer Product Safety Commission.

Neider and Hunt said their calls to the company went unreturned.

"It's amazing that products like this get sold in this country every day, and you never realize until it happens to you that maybe they're not so safe," he said. "Take them down. It's not worth it."

The South Euclid Fire Department said it is bringing in an electrical engineer Thursday to more closely examine the light and try to pinpoint a cause of the fire.

The Ever Brite light remains on the market.

25.    On May 9, 2017, the South Euclid Fire Department posted the following to its

Facebook page, with the following pictures:

CONSUMER ALERT! A resident recently experienced a small fire to the front of his garage that was self-extinguised. The cause of the fire was from an Ever Brite Solar Power LED Light (as seen on TV). The resident stated he was outside doing yard work when he heard a loud explosion in the front of his house. He investigated, finding the solar powered LED light on fire and melting the siding on his garage. If you have this solar powered LED light attached to your home or deck we suggest that you

remove it. We are doing some further testing on the light to determine the cause of the fire.





26.    The return policies for Target and Wal-Mart both require that this product can be ordered for delivery, but cannot be returned by mail. Wal-Mart's website further details that "Due to federal restrictions, this item cannot be returned by mail."

27.    A May 10, 2017, article at *wate.com*[3] entitled "Newport couple's outdoor solar light catches fire" reported in part (with video and images excluded):

> NEWPORT (WATE) – A couple in Newport is crediting their dog for alerting them to an outdoor light that caught fire. It happened a few weeks ago, two months after the family purchased four solar LED lights.

_____

[3] http://wate.com/2017/05/10/newport-couples-outdoor-solar-light-catches-fire/

Outdoor solar lights are becoming increasingly popular. You see them at many home improvement stores. They're convenient, have no batteries and are pretty bright. Donald and Jana Farley bought four motion-activated, EverBrite lights from the Lily's As Seen on TV store in Pigeon Forge.

They installed none on their shed, which caught fire a few weeks ago. Sadie, the Farleys' German Shepherd alerted Donald Farley to the flames.

"I noticed her looking up at the building. And when I looked up, there were flames shooting out around the back, the front, and hitting the top of the building here. I hollered for my wife to bring some water," he said.

"He was throwing the water on it, a pan of water. So I grabbed the water hose to spray it down more to make sure it had quit smoking," said Jana Farley.

The television commercial for the LED solar light says it is perfect for garage doors, patios and pathways. With a built-in solar panel, it charges automatically and never needs new batteries. Donald Farley said the light on his shed was hot to the touch even after dousing it with water.

He says the Chinese manufactured LED light burned where the on-off switch is located. They bought several of the lights, but immediately removed them from places around the home.

"It just scared me so bad, we just started getting them out," said Donald Farley.

The $13 light is bright. The Farleys bought the motion sensor LED version to deter intruders and illuminate dark areas. They have several other security lights around their property which have never been a problem.

On a website that sells the solar product, the light does not have glowing reviews. One reviewer said it exploded and caught on fire. Another heard a loud popping sound and the entire unit exploded. According to the website for Carol Wright Gifts, 55 percent of the respondents said they would not recommend buying the light.

"I wish I would have known that before we ever bought these," said Donald Farley.

It's likely thousands of these EverBrite LED outdoor solar lights have been sold around the country and likely most have operated

with no issues. The Farleys have written to the Consumer Product Safety Commission and explained how their light caught on fire without warning.

"We just got lucky on this one. Insurance companies beware. I would not recommend no one to buy these lights. They're fire hazards," Donald Farley said.

Lily's As Seen on TV store has not responded to a request for comment. Through research, WATE 6 On Your Side found that in 2001, the Brinkman Corporation, of Dallas, Texas, voluntarily recalled about 79,000 outdoor solar lights after it was reported some of them caught on fire. That action came as the result of complaints to the Consumer Product Safety Commission.

There has been no such government action regarding the EverBrite solar lights.

28.     On May 12, 2017, *Fox 8 Cleveland* published an article entitled "Investigators find exploding battery behind solar light fires" which reported in part:

SOUTH EUCLID- Fire investigators said they've pinpointed the reason Ever Brite lights have been exploding.

The solar powered lights that are sold on TV have been linked to fires across the country, including at least two cases in Northeast Ohio.

South Euclid fire investigators said an electrician checked a burned light and determined its battery exploded.

The device takes in so much sun that it can become overloaded and blow up, investigators said.

The South Euclid Fire Department said it will now push for a recall.

Ontel Products Corporation, the company behind Ever Brite lights, has maintained that the product meets all safety regulations required by U.S. law.

29.     On March 5, 2018, *http://www.wabi.tv* published an article entitled "Close Call: Solar Light Catches Fire on Mariaville Couple's Garage" which reported in part:

**MARIAVILLE, Maine (WABI) -** Valerie Eaton first saw Ever Brite solar lights on TV six months ago. Soon after, she and her

boyfriend, Tim Robbins, bought two and attached one of them to their garage. They had been happy with their purchase, until last week.



"We had been gone. We came back and he spotted the light on the ground. We went over and realized that it was extremely burned and the trim on the garage was burned as well."

Eaton and Robbins believe the light exploded while they were gone. They aren't positive what caused the issue, but Eaton thinks it may have been the battery.

"It burned up, smoke damage around to the front, and there was enough heat to lift one of the shingles on the roof."

Despite the damage to the garage, Eaton says things could have been much worse.

"It had a good start. It was burned through paint and into the wood. We would have lost the garage. And with diesel fuel, propane, all of that in there, we could have lost all of it.

"We were lucky ours exploded away from the garage. That's what saved it."

We reached out to Ontel Products, the company that distributes Ever Brite, but a representative declined to comment. Eaton also had trouble getting a response from Ontel.

"The first time I called, I explained what was going on and she transferred me to a line that I was on there for 30 plus minutes."

The couple is hoping to be reimbursed for the damage done to their garage, and they don't plan on using the solar lights any time soon.

Zach: You have a second one, do you plan on using that at all?
Eaton: No, I do not.

30.     On May 9, 2018, Everbrite LLC issued the following press release:

Everbrite, LLC Disclaims Affiliation with "Ever Brite" Solar Light
Linked to Series of House Fires

Milwaukee, WI, May 09, 2018 --(PR.com)-- Several recent reports
have tied a series of residential fires to an outdoor solar light
product marketed as "Ever Brite." In the wake of these reports and
ongoing confusion among consumers, Everbrite, LLC, a
Greenfield-based manufacturer of various illuminated products,
announced today that it is not affiliated in any way with the "Ever
Brite" light. According to Alan Lafreniere, Everbrite Board
Member, the "Ever Brite" light is a product of Ontel Products
Corporation, an "As Seen On TV" company located in Fairfield,
New Jersey. Legal action by Everbrite, LLC against Ontel for its
unauthorized use of the name "Ever Brite" is pending.

As recently reported by ABC affiliate ABC 57 News in South
Bend, Indiana, local *fire officials have issued a warning to
consumers to remove and discontinue use of all "Ever Brite"
lights immediately*. As reported by ABC 57 News, this warning
comes after the investigation of a fire at a residence in
Stevensville, Indiana. The fire reportedly originated in the location
of an "Ever Brite" light placed on the side of the residence. Similar
reports of fires and explosions linked to the "Ever Brite" light have
been made by other local news outlets, including WABI 5 in
Bangor, Maine; Fox 8 in Cleveland, Ohio; and WATE 6 in
Knoxville, Tennessee.

According to Everbrite, the company has incorrectly received calls
and U.S. Consumer Product Safety Commission complaints from
consumers mistaking Everbrite for the source of "Ever Brite" light.
"*We have received hundreds of calls and emails from* consumers
confusing us for the source of the solar light products since it hit
the market," said Lafreniere. "*In the past few months we've
started to get calls and complaints about fires from very upset
consumers. This is an extreme example of the significant
consumer confusion that Everbrite has seen since the solar light
went on sale*."

To report any incidents or concerns regarding the "Ever Brite"
light, Ontel Products Corporation can be contacted at (973) 439-
9000 or by mail at 21 Law Drive, Fairfield, NJ 07004.

About Everbrite, LLC

Everbrite, LLC is a world leader in the visual branding and identity industry. In business since 1927, today Everbrite designs and manufactures point-of-purchase signs, displays, outdoor identity systems, illuminated signs, illumination systems and illuminated consumer products. Its customers include A-list companies throughout the world in markets including automotive, brewery, convenience stores, medical, retail and quick service restaurants, among others. Everbrite employs more than 900 employees located at its headquarters in Greenfield, Wisconsin and domestic manufacturing facilities in Wisconsin, Illinois, Kansas, Virginia and Arizona.

(emphasis added).

31.    On May 16, 2018, *https://abc6onyourside.com* published an article entitled "Local couple warns of possible fire danger with popular solar light" which reported in part:

DELAWARE, Ohio — A Delaware couple is sending out a major warning about a popular solar powered outdoor home light that they believe could be a fire hazard. Reports are popping up all over the country about issues with the EverBrite LED light.

You may have seen commercials about the EverBrite solar powered motion light. The popular product is sold online and in stores across the country. What you may not be aware of is the ***products' growing list of complaints following spontaneous fires.***

Roach, showed ABC6 where a spark lit up the side of her garage. Immediately after the fire, she took down the unit on her home. ABC6 did a bit of digging and it turns out, this is a problem being seen across the country. ***Numerous online customer complaints of fires. One person even wrote, "Almost burnt my house down!"***

16



*A Delaware couple is sending out a major warning about a popular solar powered outdoor home light that they believe could be a fire hazard. Reports are popping up all over the country about issues with the EverBrite LED light. (WSYX/WTTE)*

Fire investigators in South Euclid determined that a house fire there last year was caused by an exploding battery from an EverBrite unit.

ABC6 contacted the new jersey based maker of the EverBrite to find out what steps the company is taking to address the issue. OnTel products has yet to respond.

The company has released the following statement to several consumer groups regarding concerns:

"OnTel Products Corporation strives to provide consumers with quality solutions and customer service, and is committed to ensuring the safety of all its products. The Ever Brite light meets or exceeds all applicable safety regulations required by law for this type of product in the U.S.A."-Caroline Kinsey, OnTel Products

"I'd take it down! And then don't leave it laying in the sun light. You need to get rid of it. Dispose of it, maybe take it to the fire department and let them decide what to do with it," Roach told ABC6.

Roach has filed a report with the U.S. Consumer Product Safety Commission. She hopes the issue is fixed before someone loses their home, or worse.

(emphasis added).

32.     A verified review of the Solar Light at carolwrightgifts.com[4] dated June 18, 2017, states "do not buy....Ontel will not return calls...battery exploded, scorching paint ....seems to be happening, a lot, as there are several internet postings re: same[.]"

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this suit on behalf of herself and, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Class:

> All persons and entities in the United States who purchased a Solar Light (the "Class").

Excluded from the Class are Defendants, any entity in which either Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendants' legal representatives, assigns and successors.

34.     In the alternative to the Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiff seeks to represent the following state subclass (the "State Class"):

> All persons who purchased a Solar Light in New York, or who purchased a Solar Light for use in New York (the "New York Class").

Excluded from New York Class are Defendants, any entity in which either Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

35.     **Numerosity**. The proposed Class (and the alternatively proposed New York Class) is sufficiently numerous and its members are dispersed throughout the United States (or alternatively New York), making joinder of all members impracticable.

---

[4] http://www.carolwrightgifts.com/everbrite-outdoor-led-light-as-seen-on-tv/80912.cfm#

36.    **Commonality**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual class members, including:

a.    whether Defendants violated consumer protection statutes;

b.    whether the Solar Light is materially defective and what are the defects;

c.    whether Defendants knew, or should have known, that the Solar Light is materially defective;

d.    whether Solar Light's defects cause fires;

e.    whether Defendants omitted and concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the defects in the Solar Light;

f.    whether Defendants acted in violation of state and federal law; and

g.    whether Plaintiff and the other members of the Class (and the alternatively proposed the New York Class) are entitled to damages and/or injunctive relief, and if so, the appropriate amount thereof.

37.    **Typicality**. Plaintiff's claims are typical of the claims of members of the proposed Class (and the alternatively proposed New York Class) because, among other things, Plaintiff and Class members sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same conduct.

38.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the proposed Class (and the alternatively proposed New York Class). Plaintiff's interests do not conflict with Class members' interests (nor the alternatively proposed New York Class) and Plaintiff has retained counsel experienced in complex class action and consumer protection

litigation to prosecute this case on behalf of the Class (and the alternatively proposed New York Class).

39.    **Rule 23(b)(3)**. In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual class members and a class action is superior to individual litigation. The amount of damages available to plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

40.    **Rule 23(b)(2)**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Class (and the alternatively proposed New York Class), making final declaratory or injunctive relief appropriate with respect to the proposed Class (and the alternatively proposed New York Class) as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Class or, Alternatively, the New York Class)

41.    Plaintiff repeats and re alleges each and every allegation contained above as if fully set forth herein.

42.     Plaintiff brings this count on behalf of herself and the other members of the Class (and the alternatively proposed New York Class).

43.     At all times mentioned herein, Defendants marketed, promoted, and/or sold the Solar Light, and impliedly warranted to that the Solar Light was of merchantable quality when it is in fact unfit for its ordinary and intended use.

44.     Defendants are "merchants" as defined under the Uniform Commercial Code (the "UCC").

45.     The Solar Lights are "goods" as defined under the UCC.

46.     Defendants impliedly warranted that the Solar Lights were of a merchantable quality.

47.     Defendants breached the implied warranty of merchantability because the Solar Lights were not of a merchantable quality due to their propensity to ignite.

48.     Plaintiff and the other Class members' (or alternatively proposed New York Class Members') interactions with Defendants suffice to create privity of contract between Plaintiff and Class members, on the one hand, and one or both Defendants, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and other Class (or alternatively New York Class) members are intended third party beneficiaries of contracts (including implied warranties) between themselves Defendants.

49.     As a direct and proximate result of the breach of said warranties, Plaintiff and the other members of the Class (and alternatively the New York Class) were injured and are entitled to damages.

50.     Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers would be unconscionable and unenforceable because

Defendants knowingly sold and/or administered sales of a defective product without informing consumers about the defects thereof.

51.     Plaintiff and the other Nationwide (or in the alternative New York) Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

52.     Defendants were provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Solar Light defect(s) became public.

53.     As a direct and proximate result of the breach of said warranties, Plaintiff and the other members of the Class (and the alternatively proposed New York Class) suffered and will continue to suffer losses as alleged herein.

**COUNT II:**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. Gen. Bus. Law § 349)**

54.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

55.     Plaintiff brings this action on behalf of herself and the other members of the New York Class against both Defendants.

56.     Plaintiff, the other New York Class members and both Defendants are "persons" under N.Y. Gen. Bus. Law §349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

57.     Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

58.     The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section.

59.     In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning dangers of the Solar Light, namely the inherent danger of using the Solar Light and the unreasonable chance of fires caused thereby, as alleged above. Plaintiff and the other New York Class members did not and could not unravel the deception on their own, and would not have used the Solar Light if they were aware of the true risks thereof.

60.     Defendants thus violated the provisions of the NY DAPA by, at a minimum: (1) representing that the Solar Light have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Solar Light are of a particular standard, quality, and grade when they are not (such as that Ontel "is committed to ensuring the safety of all its products" and that the Solar Light "meets or exceeds all applicable safety regulations required by law for this type of product in the U.S.A.", which appears (as the Company has responded as alleged above); and (3) failing to disclose information concerning the safety of the Solar Light with the intent to induce consumers to purchase the Solar Lights.

61.     Defendants owed Plaintiff and the other members of the New York Class members a duty to disclose, truthfully, all the facts concerning the efficacy and efficiency of the Solar Light because they: a. possessed exclusive knowledge that they were marketing, selling, and distributing unsafe Solar Lights.

62.     Plaintiff and the other New York Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' material misrepresentation and concealment of and failure to disclose material information. Plaintiff and the other New York

Class members who purchased the Solar Lights would not have purchased them at all and/or or paid less for them.

63.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the other members of the New York Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

### COUNT III:
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. Gen. Bus. Law § 350)

64.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

65.    Plaintiff brings this claim only on behalf of herself and the other members of the New York Class against Defendants.

66.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law §350, the New York False Advertising Act ("NY FAA") 2369. The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

67.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or

misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be materially untrue and misleading to Plaintiff and the New York class.

68.     Defendants made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Solar Lights, particularly concerning the safety and efficacy of the Solar Lights, including the representation made (as alleged above) that Ontel "is committed to ensuring the safety of all its products" and that the Solar Light "meets or exceeds all applicable safety regulations required by law for this type of product in the U.S.A."

69.     The misrepresentations and omissions regarding set forth above were material and likely to deceive a reasonable consumer. Specifically, although Defendants advertised the Solar Lights as safe and effective, they in created a significant fire hazard.

70.     Defendants intentionally and knowingly misrepresented material facts regarding the Solar Lights with intent to mislead Plaintiff and the other members of the New York Class.

71.     Defendants' false advertising was likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff and New York Class members, about the illegality and true characteristics of the Solar Lights.

72.     Defendants' violations of the NY FAA present a continuing risk to Plaintiff and to the general public. Defendants' deceptive acts and practices affect the public interest.

73.     Plaintiff and the other New York Class members who purchased Solar Lights either would not have purchased them at all or paid less but for Defendants' materially false advertising in violation of the NY FAA.

74.     Plaintiff and the other members of the New York Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the

Defendants' false advertising in violation of the NY FAA, including, but not limited to, the loss of money in connection with purchasing Solar Lights; lost or diminished use, enjoyment and utility of Solar Lights; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the NY FAA.

75.     Plaintiff and the other members of the New York Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York class members. Because Defendants' conduct was committed willingly and knowingly, New York class members are entitled to recover three times actual damages, up to $10,000.

76.     The New York Class also seeks an order enjoining Defendants' false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

## COUNT IV
## Unjust Enrichment

77.     Plaintiff repeats and re alleges each and every allegation contained above as if fully set forth herein

78.     Plaintiff asserts this common law cause of action on behalf of herself and the other members of the proposed Class.

79.     At all relevant times, Defendants sold, distributed, and/or marketed Solar Light that had the capacity to, and in many cases did, cause fires, but made materially false and misleading representations about the quality and safety of the Solar Light, such as touting the safety of the Solar Light in the news articles reported above and by representing that "[t]he internal LED light lasts a lifetime", ignoring its lifetime is often cut short by fires.

80.     Plaintiff and the other members of the Class (and the alternatively proposed New York Class) conferred upon Defendants, without knowledge of the inherent flaws or dangers in

the Solar Light, payment for the devices – benefits that were non-gratuitous. Defendants accepted or retained the non-gratuitous benefits from Plaintiff and the other members of the Class (and the alternatively proposed New York Class), even though Plaintiff and the other members of the class were not receiving products of the high quality, nature, fitness, safety, or value that had been represented by Defendants and that reasonable consumers would have expected, and inequity has resulted.

81.     Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and the other members of the Class (and the alternatively proposed New York Class) under these circumstances is unjust and inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class (and alternatively the New York Class), respectfully requests that the Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

A.      Certification of the proposed Class, including appointment of Plaintiff as class representative and her counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief, including public injunctive relief, as the court deems appropriate;

D.      Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.      Revocation of acceptance;

F.      Declaratory relief as the court deems appropriate;

G.      Treble and/or punitive damages as permitted by applicable laws;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.      An award of costs and attorneys' fees; and

J.      Such other or further relief as may be appropriate.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 8, 2018                    By:  s/Michael J. Klein
                                         Mark Levine
                                         Michael J. Klein
                                         **STULL, STULL & BRODY**
                                         6 East 45th Street
                                         New York, NY 10017
                                         Telephone: (212) 687-7230
                                         Facsimile: (212) 490-2022
                                         Email:  mlevine@ssbny.com
                                                 mklein@ssbny.com

                                         **ATTORNEYS FOR PLAINTIFF**